IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HENRY TEROIL ROLLIE,           )
                           )
             Petitioner,      )
                           )
             v.               )       Civil Action No. 05-132 Erie
                           )        JUDGE SEAN McLAUGHLIN
SUPERINTENDENT RAYMNOND     )      MAGISTRATE JUDGE BAXTER
COLLERAN, et al.,            )
                           )
            Respondents.    )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.    RECOMMENDATION

           It is recommended that the Petition for Writ of Habeas Corpus be dismissed, that a certificate of appealability be denied.

### II.    REPORT

           Henry Teroil Rollie is a state prisoner incarcerated at the State Correctional Institution at Waymart, Pennsylvania, serving a sentence of 10 to 20 years imprisonment imposed on May 1, 2003 in the Court of Common Pleas of Erie County, Pennsylvania. Petitioner Rollie seeks federal habeas corpus relief.

        1.    **Facts of the crime.**

           Nathan Watkins, 18 years old at the time of the offense, testified at trial that he was playing basketball on August 13, 2002 (TT 21)[1]. He was waiting to play in the next pick-up game when petitioner Henry Rollie and Reginald Harris arrived, got out of their car, and claimed that they had the next game (TT 22-24). Watkins disputed this, and an argument ensued which resulted in Watkins playing the next game (TT 25). No further incident occurred at the basketball court, and Watkins left the court after dark, and began walking home through a park area. Watkins heard steps behind him, and

---

[1]    Numerals in parentheses preceded by the letters "TT" refer to pages in the Trial Transcript.

turned as Harris ran into him. Rollie held a knife against Watkin's throat and attempted to take Watkin's book bag (TT 28-29). Watkins grabbed the knife and struggled, cutting his hands (TT 29). He was knocked down, kicked repeatedly, and Rollie sliced at his book bag with the knife while threatening to cut Watkins "like a pig" (TT 30). Watkins managed to make it to the street where there were car lights, and Rollie and Harris fled (TT 32).

Watkins identified a knife found at the scene as "exactly like" the knife used by Rollie during the incident (TT 37). Watkins described the knife to police as a "steak knife" with a serrated edge, like the knife found at the scene (TT 39-40). The trial judge admitted the knife as demontrative evidence over a defense objection, and instructed the jury that they could "not infer that this is in fact the knife that was wielded" but only that it had "certain characteristics that are similar to the knife that was used." (TT 42).

Rollie's defense counsel cross-examined the victim and asked if the victim had been convicted of theft (TT 64-65). In fact, the victim had previously been charged with theft, but the charges were dismissed through an Accelerated Rehabilitative Disposition (ARD) program, evidence of which is inadmissible at trial in Pennsylvania. The trial court sustained the Commonwealth's objection to the line of questioning, denied the Commonwealth's motion for a mistrial, reprimanded Rollie's counsel at side bar, and gave a brief instruction to the jury informing them that the victim did not, in fact, have a prior conviction for theft (TT 78-79).

Julie Forsythe, who lives next to the park where Watkins was attacked, witnessed the assault and saw one of the attackers wielding a knife (TT 102-103). She was not able to identify the attackers. Her husband also witnessed the attack, and was able to see that the attackers were black and the victim was white, and that one of the attackers had a knife (TT 112-113). Steven Ayers also lives near the park and saw the altercation from a distance of about 50 yards. It appeared to him that the victim was being assaulted by two other individuals (TT 116-117).

Neither defendant testified at trial, and the only defense witness presented was a police officer who was asked to read his report of the victim's statement to the jury (TT 127-146).

**2.    Procedural history.**

2

Petitioner was charged in the Court of Common Pleas of Erie County, Pennsylvania, with one count each of Criminal Conspiracy to commit Aggravated Assault, Aggravated Assault, Criminal Conspiracy to commit Robbery, Robbery, Simple Assault, Terroristic Threats, Recklessly Endangering Another Person and Possessing Instruments of Crime. Petitioner, through counsel, filed a motion to suppress evidence prior to trial which sought to suppress: (1) a knife found at the park where the attack occurred; (2) the victim's backpack which the victim provided to police and which had been cut during the attack; and (3) the victim's photographic identification of petitioner as one of the assailants (State Court Record, Doc. No. 7). The trial court addressed the motion on the record prior to trial, noting that it had already been denied as being untimely (Trial Transcript at 5). The court went on, however, to note that the backpack could not be suppressed because it was not the subject of a search (Id.). The court did not expressly rule on the merits of the motion to suppress the knife prior to trial. Finally, the court noted that petitioner had failed to set forth any facts indicating that the photographic identification was in any way improper (Id. at 6). And, in any event, the court noted that petitioner could again challenge the photographic identification at trial.

Petitioner proceeded to trial and, on March 17, 2003, he was found guilty of all counts save the Reckless Endangering charge, which the court dismissed. Sentence was imposed on May 1, 2003. Post-sentence motions were denied, and petitioner filed a Statement of Matters Complained of on Appeal on June 18, 2003, in which he asserted:

1. The trial court erred in denying the motion to suppress the knife because the knife was not shown to have been in petitioner's possession or control;

2. The trial court erred in denying the motion to suppress the backpack because it was in the victim's control for two days before being given to police;

3. The trial court erred in denying the motion to suppress the photographic identification because it was unduly suggestive;

4. The trial erred in permitting the Commonwealth to use the knife as demonstrative evidence at trial where the victim could not identify it; and

5. The trial court erred in denying a defense objection to the prosecutor's closing argument wherein the prosecutor wished jurors a happy "Saint Patrick's Day," thereby attempting to prejudice the jury with a religious symbol.

3

(State Court Record, Doc. No. 27).  The trial court issued an opinion on August 13, 2003, filed jointly with respect to petitioner's co-defendant, in which petitioner's claims were rejected (State Court Record, Doc. No. 28).  The court held that there was no basis for suppressing the knife or the backpack as neither had been seized from the defendants.  The knife was found on the ground in a public area, and the backpack was voluntarily turned over by the victim.  Further, the knife was deemed admissible at trial over a relevancy objection because the victim testified that it looked exactly like the one used by petitioner during the crime.  The court determined that the knife was admissible as demonstrative evidence, and gave a cautionary instruction on the use of such evidence at trial (id. at 13).  Finally, the court found that the prosecutor's comment during closing argument wishing the jury a happy St. Patrick's Day was neither a deliberate attempt to prejudice the jury, nor was it an attempt to appeal to the juror's religious beliefs (id. at 14).[2]

Petitioner appealed to the Superior Court of Pennsylvania and presented only two claims for that court to review:

(1)    Is a defendant prejudiced when the Commonwealth makes religious statements during its closing argument?

(2)    In criminal proceedings, does an exhibit that is claimed to be demonstrative have to be reasonably related to the actual facts of the alleged crime?

(State Court Record, Doc. No. 35 at 3).  The Superior Court affirmed in an opinion dated March 23, 2004.  The Superior Court agreed that there was no evidence that the prosecutor's St. Patrick's Day comment was a deliberate attempt to destroy the jury's objectivity, and further found that no actual prejudice accrued to petitioner from the comment (State Court Record, Doc. No. 35 at 6).  With respect to the second claim, the Superior Court relied upon the victim's testimony that the knife "looked exactly like the knife that was around [his] throat" (Trial Transcript, 3/14/2003 at 39) in concluding the knife had been authenticated as demonstrative evidence and that its relevance outweighed any potential

---

[2]    The prosecutor began her closing argument by saying, "Good morning and Happy St. Patrick's Day to those of you who are Irish or who wish to be today." (Trial Transcript, 3/17/2003 at 19). No further mention of the holiday was made by the prosecutor.

4

prejudicial impact (State Court Record, Doc. No. 35 at 8).  Petitioner did not seek review in the Supreme Court of Pennsylvania.

Petitioner filed a petition under the Post Conviction Relief Act (PCRA) on April 13, 2004, and he filed supplements to that petition on April 14, April 23, May 4, May 19 and May 30, 2004 (State Court Record, Doc. Nos. 31-34, 36, 38).  On June 28, 2004, the trial court entered a Notice of Intent to Dismiss the petition, and attached thereto a "no-merit" letter from court-appointed counsel (Id., Doc. No. 39).  Petitioner responded with an objection to counsel's submission, and a request for new counsel and a hearing (id., Doc. No. 40).  The trial court denied the motions but afforded petitioner 30 days to file any amendment to his petition (id., Doc. No. 41).  Petitioner filed yet another amended petition on July 16, 2004, and supplemented this on July 19, 2004 (id., Doc. Nos. 42 and 43).  The trial court denied PCRA relief on July 19, 2004 (id., Doc. No. 44) and petitioner appealed.

Petitioner was directed to file a concise statement of matters complained of on appeal, which he did on August 9, 2004, raising the following claims:

1. Counsel did not adequately investigate and prepare the defense of this case.

2. Counsel did not file a timely motion to suppress evidence.

3. Admission of irrelevant evidence violated constitution.

4. Crimes were not proven beyond a reasonable doubt.

5. Defendant was denied a fair jury trial as jury consisted of no one of his race, age or social status.

6. Appellate counsel was ineffective.

7. Commonwealth failed to prove robbery beyond a reasonable doubt.

8. Commonwealth failed to prove conspiracy beyond a reasonable doubt.

9. Commonwealth failed to prove a connection between the defendant and the knife which was used at trial for demonstrative evidence.

10. Commonwealth failed to prove that the victim's cuts came from a knife as the victim refused medical treatment.

11. Commonwealth failed to prove possession as the defendant's fingerprints were not found on the knife and the knife was not within his control.

12. Trial court erred in denying defendant's motion seeking new counsel on appeal.

5

13.    Trial court erred in denying the motion to suppress the backpack and the knife.

14.    PCRA counsel was ineffective for failing to present claims.

15.    Defense counsel brought up the victim's expunged criminal conviction and the trial court instructed the jury to ignore this statement.

(State Court Record, Doc. No. 47).  The trial court issued an opinion on August 11, 2004, finding that petitioner's claims of error and ineffective assistance of counsel had either been previously litigated on direct appeal, or were being made in boilerplate fashion with no supporting argument or factual averments (id., Doc. No. 48).

On appeal, the Superior Court first addressed petitioner's claims of error and ineffective assistance arising out of the motion to suppress, which was denied prior to trial.  "We see no basis for suppression, and Appellant has suggested none." (State Court Record, Doc. No. 54 at 3).  The court noted that petitioner's complaint seemed more in the nature of an objection to admission on the basis of relevancy, an issue already litigated on direct appeal (id. at 4).

The Superior Court rejected petitioner's challenge to the racial composition of his jury on the basis that it was not adequately pleaded (id. at 6).  The court found that petitioner's claim lacked any specifics, and was, in effect, that "there were no African-Americans on his jury," which the court found insufficient to make out a claim under either Taylor v. Louisiana, 419 U.S. 522 (1975)(challenge to system of selecting potential jurors which has effect of excluding distinct groups) or Batson v. Kentucky, 476 U.S. 79 (1986)(systematic use of peremptory strikes to exclude members of particular racial group improper).  Petitioner's further claim that counsel was ineffective for failing to object to the racial composition of the jury was found to be a mere "boilerplate" assertion lacking specifics, making it inadequate to rebut the presumption that counsel provided effective assistance (id. at 7).

The court next addressed petitioner's challenges to the sufficiency of the evidence and concluded: (1) that robbery can be proven even if the victim's backpack was never successfully taken from him; (2) that there was sufficient evidence of concerted action between petitioner and his co-defendant to support a conviction of conspiracy; (3) that the victim's testimony that petitioner possessed a knife was sufficient to prove possession of same at the time of the crime; and (4) that petitioner's

6

challenge to the aggravated assault claim is waived since it had no supporting argument in the appellate brief (id. at 7-8).

The Superior Court rejected petitioner's claim that new counsel should have been appointed to assist him during direct appeal since petitioner failed to establish prejudice. Counsel perfected an appeal and raised "valid, albeit unsuccessful issues." (Id. at 10). Also rejected was petitioner's claim concerning trial counsel's improper remark at trial concerning the victim's prior conviction for theft. Although counsel was "excoriated" by the court, this was done at sidebar with the jury in recess. Hence, no prejudice could have accrued to petitioner from the court's treatment of defense counsel (id. at 10).

Petitioner's remaining claims of ineffective assistance were rejected by the Superior Court on the basis that there was no supporting argument provided in petitioner's brief. The Superior Court denied the claims as boilerplate issues incapable of overcoming the presumption of effective assistance.

Petitioner did not seek review in the Supreme Court of Pennsylvania.

The instant petition was filed on May 4, 2005, and contains several "general claims." Petitioner asserts that he was unable to fully develop his claims in the space provided.[3] Nonetheless, petitioner lists the following as his "general claims" for relief:

1.  Ineffective assistance of counsel.

    (A) Trial counsel provided ineffective assistance.

    (B) Each and every counsel associated with applicant[']s case provided serial "layered" ineffective assistance of counsel.

2.  Biased and prejudicial jury.

3.  State failed to prove beyond a reasonable doubt each and every element of offenses charged against appellant.

---

[3]     It is interesting to note that this argument concerning a perceived inability to flesh out his claims appears in an addendum to the petition, presented on a separate sheet of paper. The court is, accordingly, puzzled by petitioner's assertion that the space provided on the form prevented him from offering details concerning his claims.

4.    Judicial error misconduct.

5.    Prosecutorial error misconduct.

6.    Trial court error.

7.    Illegal sentence (inchohate [sic] sentence).

(Doc. No. 3, addendum).  Petitioner then requested court-appointed counsel to prepare an "addendum brief," a motion which petitioner later renewed (Doc. No. 5) and which this court denied (Doc. No. 6).

The Commonwealth has responded to the petition (Doc No. 15).  Petitioner replied (Doc. No. 16) and specifically addressed the Commonwealth's argument concerning exhaustion by asserting that each of his claims was raised before the PCRA court and on appeal from the denial of PCRA relief. Petitioner then filed an "amendment" to his petition (Doc. No. 23) in which he again explains his view concerning the exhaustion of his claims and further notes that he has not elaborated on his claims since he has not been provided with transcripts of the "verdict slips, jury survey slips, and the jury selection transcripts" (Doc. No. 23 at 5).  He concludes this amended reply with statements concerning procedural default.  The petition is now ripe for disposition.

### 3.    Exhaustion.

The first issue to be addressed is whether the petitioner has exhausted his state court remedies.  Exhaustion requires that the claims presented in the federal court have been presented in substantially the same form to the state's highest court, with identity of both facts and legal theory. Bond v. Fulcomer, 864 F.2d 306 (3d Cir. 1989).  Even if the claims have been so presented to the state's highest court, "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. §2254(c); Castille v. Peoples, 489 U.S. 346 (1989).  And, although the exhaustion requirement is not jurisdictional, it "should be strictly adhered to because it expresses respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions." Landano v. Rafferty, 897 F.2d 661, 669 (1990).  The requirement also recognizes the duty, and ability, of the state courts to uphold federal law, and serves the interest of ensuring a fully developed record in the state court. Id.  "[S]tate prisoners must give the state courts one full opportunity

8

to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). Finally, a federal habeas court is required to dismiss a petition which contains both exhausted and unexhausted claims. Rose v. Lundy, 455 U.S. 509, 510 (1982); Landano v. Rafferty, supra.

Analysis of petitioner's claims is, of course, dependent upon an accurate recitation of the claims actually made in the petition. The court, in keeping with its duty to read the instant petition liberally, will expand upon petitioner's "general" assertions so as to include similar claims he raised before the state courts.

Petitioner's first claim is that trial counsel provided ineffective assistance. He also asserts generally that all counsel provided "layered" ineffective assistance. In the PCRA court, petitioner asserted that trial counsel was ineffective for: (1) filing an untimely Motion to Suppress Evidence; (2) for questioning the victim about a prior, expunged conviction which resulted in a reprimand from the court; and (3) for failing to object to the racial composition of the jury. Appellate counsel is also alleged to have provided ineffective assistance apparently for failing to assert trial counsel's ineffectiveness with respect to these four issues. These claims were presented in the PCRA petition filed in state court, and were also presented on appeal to the Superior Court. Hence, state court remedies have been exhausted with respect to these claims[4].

Petitioner next asserts that his jury was biased (Claim 2). This claim was framed before the PCRA court and on appeal from the denial of PCRA relief as being a challenge to the composition

---

[4]    Petitioner also alleges that PCRA counsel was ineffective for failing to raise issues before the PCRA court. This claim was presented on appeal in the Superior Court and also satisfies the exhaustion requirement. However, "[t]here is no constitutional right to an attorney in state post-conviction proceedings. Pennsylvania v. Finley, 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); Murray v. Giarratano, 492 U.S. 1, 109 S.Ct. 2765, 106 L.Ed.2d 1 (1989) (applying the rule to capital cases). Consequently, a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings. See Wainwright v. Torna, 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982)(where there is no constitutional right to counsel there can be no deprivation of effective assistance)." Coleman v. Thompson, 501 U.S. 722, 752 (1991). This claim is meritless and will not be further addressed.

of the jury at petitioner's trial, and specifically to counsel's failure to object during voir dire.  Thus, this claim is subsumed in petitioner's ineffective assistance claim and state court remedies have been exhausted.  Petitioner's third claim, that the Commonwealth failed to prove all of the elements of the criminal charges against him, was likewise presented to the PCRA court and on appeal from the denial of PCRA relief.  This claim also satisfies the exhaustion requirement.

Petitioner next asserts "judicial error misconduct" (Claim 4) and later asserts a related claim of "trial court error" (Claim 6).  On direct appeal, petitioner asserted it was error to admit the knife into evidence.  In his PCRA petition, petitioner additionally asserted that the knife was irrelevant and should not have been admitted, that the trial court erred in denying petitioner's motion for new counsel on direct appeal, and petitioner repeated his claim that the trial court erred in denying the motion to suppress the knife and the backpack.  These claims, as well, have been presented to the state courts and the exhaustion requirement is satisfied.

Petitioner next asserts "prosecutorial error misconduct" (Claim 5) referring to the "St. Patrick's Day" comment during closing arguments, which was litigated on direct appeal, and is exhausted.

Petitioner's final claim, that his sentence was somehow illegal, was never presented to the state courts in any fashion.  Petitioner has, therefore, not fairly presented this claim to the state courts.  However, he presently possesses no means to assert these claims in the state courts since he has already filed one PCRA petition, and his conviction became final in 2004 at the conclusion of petitioner's direct appeal. 42 Pa.C.S.A. § 9545(b)(1)(petition, even second or subsequent, must be filed within one year of the time conviction becomes final).  Thus, even if petitioner may be said not to have "fairly presented" his sentencing claim to the state courts, exhaustion is nonetheless excused in this case. "If a claim has not been fairly presented to the state courts but state law clearly forecloses review, see Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir.1998), 28 U.S.C. §2254(b)(1)(B) (1988) (amended 1996), exhaustion is excused, see, e.g., Lambert, 134 F.3d at 513, 517-19; Doctor v. Walters, 96 F.3d 675, 681 (3d Cir.1996), but the doctrine of procedural default may come into play." Carpenter v. Vaughn, 296 F.3d 138, 146 (3d Cir. 2002).

Exhaustion is not a bar to consideration of any of petitioner's claims, although petitioner's failure to timely raise claims in the state courts may constitute a state court procedural default which bars review as to some of his claims.

### 4.    Procedural default.

Like the exhaustion requirement, the procedural default doctrine is based upon notions of comity and federalism. The procedural default barrier rests upon the "independent and adequate state grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

A state's procedural rules are entitled to deference by federal courts, and violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of habeas claims. Coleman v. Thompson, 501 U.S. at 750. Violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine even where no state court has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 116 S.Ct. 1027 (1996).

Federal habeas review is not available to a petitioner whose constitutional claims have not been addressed on the merits due to procedural default unless such petitioner can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Coleman v. Thompson, 501 U.S. at 750.

Petitioner's claim that the trial court should have suppressed the backpack and the knife were raised in post-trial motions, but petitioner did not then present this claim on direct appeal to the Superior Court. This constitutes a waiver of the claim under state law. Commonwealth v. Bond, 819 A.2d 33, 39 (Pa. 2002)("Even if this Court were to assume that these two claims of trial error were not previously litigated, they would be waived under the PCRA since appellant's present theories could have been presented on direct appeal."); 42 Pa.C.S. §9544(b)(issue is waived if petitioner failed to raise it

11

and the issue could have been raised before trial, at trial, on appeal, in habeas corpus proceeding, or in prior proceeding under PCRA). Waiver is an independent and adequate state ground for denying the suppression claim.

Petitioner's Claim 7, that his sentence was illegal, was not presented to the state courts at any level, and is likewise subject to procedural default.

### a.    Cause and prejudice.

Petitioner's claims concerning suppression of the knife and back pack and the legality of his sentence are subject to a state court procedural default. This court cannot review these claims absent petitioner satisfying the "cause and prejudice" standard. To satisfy the cause standard, petitioner must demonstrate that some objective factor external to the defense impeded his efforts to raise the claim in state court. McCleskey v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986).

With respect to the failure to raise claims on direct appeal, petitioner asserts that appellate counsel was ineffective for failing to raise his claims. However, neither a deliberate strategic decision nor an inadvertent failure of counsel to raise an issue constitutes "cause" unless counsel's performance failed to meet the Sixth Amendment standard for competent assistance. Engle v. Isaac, 456 U.S. 107 (1982); Carrier, 477 U.S. at 485-87. Appellate counsel need not raise every possible claim in order to avoid a claim of ineffective assistance. Sistrunk v. Vaughn, 96 F.3d 666, 670 (3d Cir. 1996). Counsel could reasonably have pursued only those claims which he thought most likely to succeed and, even if petitioner's new claims have merit, appellate counsel is not ineffective for choosing to present other claims instead. Here, petitioner has not presented facts from which the court can conclude that state court appellate counsel lacked a reasonable basis for failing to raise the additional claims presented by petitioner. Hence, petitioner has failed to establish that counsel's asserted failure can constitute cause for the procedural default.

More to the point in this instance, appellate counsel cannot be found ineffective for failing to assert claims which lack merit. See Diggs v. Owens, 833 F.2d 439, 446 (3d Cir.1987)(appellate counsel did not render ineffective assistance where issues not raised on appeal were

12

without merit); <u>United States v. Cook</u>, 45 F.3d 388, 392 (10th Cir. 1995)(same). Petitioner has never identified a basis for suppressing the backpack or the knife since neither were seized from him. Thus, even if counsel had repeated his claim concerning the motion to suppress it would have been denied on appeal.

Finally, petitioner fails to indicate how the state court sentence was, in any way, illegal. He again fails in his burden of showing that counsel was ineffective in failing to pursue this claim on appeal.[5]

Petitioner has failed to establish cause for his procedural defaults. The Court need not consider the question of actual prejudice. <u>See</u> <u>Murray</u>, <u>supra</u>, 477 U.S. at 533. Thus, this leaves only the miscarriage of justice exception as a means for petitioner to obtain review of his claims.

**b.      Miscarriage of justice exception.**

Although petitioner cannot demonstrate the necessary "cause" to avoid his state court procedural defaults, this court may still review his claims if he can show that a "fundamental miscarriage of justice would result from a failure to entertain the claim." <u>McCleskey</u>, 499 U.S. at 495. A federal court may use its discretion to correct a fundamental miscarriage of justice if it appears that a "constitutional violation probably resulted in the conviction of one who is actually innocent." <u>Murray</u>, 477 U.S. at 496. <u>See also</u> <u>Coleman</u>, 501 U.S. at 748; <u>McCleskey</u>, 499 U.S. at 502. Under the "miscarriage of justice" standard, a petitioner must present new evidence of innocence and persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find

---

[5]      It appears that petitioner is attempting to assert that his sentence was illegal under Pennsylvania law as he was sentenced for two inchoate crimes. In this respect, Pennsylvania law provides that a person may not be convicted of more than one charge of criminal attempt, solicitation or conspiracy for conduct which is designed to culminate in the same crime. 18 Pa.C.S. §906. I.e., petitioner could not be convicted of both attempt and conspiracy to commit a single crime such as robbery. The record reflects that there were no such "overlapping" convictions of inchoate crimes. The only inchoate crimes charged were conspiracy to commit aggravated assault and conspiracy to commit robbery (State Court Record, Doc. No. 19). Since these charges were charges are addressed to two separate underlying crimes, §906 is in applicable and there has been no violation of state law in this respect.

him guilty beyond a reasonable doubt. <u>Schlup v. Delo</u>, 513 U.S. 298 (1995); <u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1996). This is a stronger showing than is required to establish prejudice and is found only in a truly "extraordinary" case. <u>Schlup</u>, 513 U.S. at 327. To succeed on an actual innocence claim, a petitioner must invoke "reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559, 118 S.Ct. 1489, 140 L.Ed.2d 728 (1998), and "show that it is more likely than not that no reasonable juror would have convicted him in light of new evidence presented in his habeas petition." <u>Schlup</u>, 513 U.S. at 327.

Petitioner's claim concerning suppression does not implicate his actual innocence, but instead goes to the fairness of his trial. <u>See</u>, <u>e.g.</u>, <u>Cannon v. Johnson</u>, 23 Fed.Appx. 218, 220 (6th Cir. 2001)("Cannon's actual innocence argument involved allegations of improper shackling, defective jury instructions, and prosecutorial misconduct. The district court properly noted that these allegations do not bear on Cannon's actual innocence, but relate to the fairness of his trial."). Likewise, his sentencing claim, even if it had a proper basis under state law, does not implicate his actual innocence and, accordingly, does not meet the high standard for the miscarriage of justice exception. Petitioner's claims concerning suppression and sentencing do not implicate his actual innocence of the state court conviction, and are barred by the doctrine of procedural default[6].

### 5.    Merits.

Section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations. 28 U.S.C. § 2254. Specifically, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e). Where a state court's factual findings are not made explicit, a federal court's "duty is to begin with the [state] court's legal conclusion and reason backward to the factual premises that, as a matter of reason and logic, must have undergirded it." <u>Campbell v. Vaughn</u>, 209 F.3d 280, 289 (3d Cir. 2000). In determining what implicit factual

---

[6]    These claims will not be further addressed. It should be noted, however, that each claim would fail on the merits for reasons already discussed in the context of procedural default analysis.

findings a state court made in reaching a conclusion, a federal court must infer that the state court applied federal law correctly. Id. (citing Marshall v. Lonberger, 459 U.S. 422, 433 (1982)).

 A federal court may not issue the writ unless it concludes that the state court's adjudication resulted in a decision that was "contrary to," or an "unreasonable application of," clearly established federal law as determined by the Supreme Court of the United States.  28 U.S.C. § 2254(d)(1).  In  Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court discussed the independent meanings of the "contrary to" and "unreasonable application" clauses contained within § 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. at 411-413. The Supreme Court further clarified that a federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. Id. at 409.  "Under §2254(d)(1)'s unreasonable application clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

 Several of petitioner's claims are framed in terms of ineffective assistance of counsel. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington, 466 U.S. 668, 684 (1984)).

> Thus the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial.  Absent some effect of challenged conduct on the reliability of the trial process, the Sixth Amendment guarantee is generally not implicated.

Fretwell, 506 U.S. at 369 (citing United States v. Cronic, 466 U.S. 648, 658 (1984)).  See also Kimmelman v. Morrison, 477 U.S. 365, 374 (1986) (the essence of a claim alleging ineffective as-

sistance is whether counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect).

The Supreme Court has formulated a two-part test for determining whether counsel rendered constitutionally ineffective assistance:  1) counsel's performance was unreasonable; and 2) counsel's unreasonable performance actually prejudiced the defense. Strickland, 466 U.S. at 687.  To determine whether counsel performed below the level expected from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on the facts of the particular case, viewed at the time of counsel's conduct. Strickland, 466 U.S. at 690.  A petitioner who claims that he or she was denied effective assistance of counsel carries the burden of proof. Cronic, 466 U.S. at 658.

The first prong of the Strickland test requires a defendant to establish that his attorney's representation fell below an objective standard of reasonableness by committing errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 688.  A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the totality of the circumstances, the challenged action "might be considered sound trial strategy." Id. at 689.  The question is not whether the defense was free from errors of judgement, but whether counsel exercised the customary skill and knowledge that normally prevailed at the time and place. Id.

The second prong requires a defendant to demonstrate that counsel's errors deprived him of a fair trial and the result was unfair or unreliable. Strickland, 466 U.S. at 689.  To prove prejudice, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Strickland, 466 U.S. at 694 (emphasis added). A "reasonable probability" is one that is sufficient to undermine confidence in the outcome. Id.

a.    **Trial counsel was ineffective for filing an untimely Motion to Suppress Evidence.**

The trial court did initially deny petitioner's motion to suppress on the basis that it was untimely.  However, at the time of trial the court reached the merits of petitioner's motion, and

16

concluded that there was no basis for suppression. The Superior Court dealt with this claim on appeal

from the denial of PCRA relief as follows:

> The primary argument put forward by Appellant is that trial counsel was
> ineffective in failing to properly and timely advance a suppression motion. As
> a result, Appellant was unable to suppress evidence in the form of a knife found
> near the scene of the crime and a backpack worn by the victim at the time of the
> crime. There is absolutely no merit to this argument. We see no basis for
> suppression, and Appellant has suggested none. Neither item of evidence was
> improperly seized by police. Rather, the knife was found near the crime scene,
> and the back pack was voluntarily submitted to the police by the victim. Since
> there was no basis for suppression, there was no prejudice to Appellant in
> counsel's allege failure to properly submit a motion for suppression.

(State Court Record, Doc. No. 54 at 3-4). The state court's analysis is consistent with federal law.

Diggs, supra (counsel not ineffective for failing to raise meritless claim). Counsel's failure to timely

file the motion to suppress did not cause petitioner prejudice, and this claim must be rejected.


        **b.**       **Trial counsel was ineffective for questioning the victim about a prior, expunged conviction which resulted in a reprimand from the court.**

Trial counsel did, as petitioner asserts, improperly question the victim about a prior,

inadmissible criminal episode during trial (TT 64-65). The trial court was upset with counsel, and fined

him for what the court perceived to be misconduct. All of this, though, occurred with the jury out of

the courtroom (TT65-76). The jury heard the question, the objection, and then, later, the trial court's

instruction that the victim did not have a prior conviction for theft (TT 77-78).

The Superior Court found that petitioner failed to establish prejudice from counsel's

alleged mistake. "Although the court excoriated defense counsel while at sidebar and while the jury was

in recess, at no point did the court admonish counsel in the presence of the jury. Thus, we see no

possible prejudice to Appellant on this basis, and we find no ineffectiveness." (State Court Record, Doc.

No. 54 at 10). A review of the record indicates that the trial court's ruling in front of the jury was

entirely innocuous, and at most implied that defense counsel was mistaken about the victim's prior

record. There is certainly no indication that the jury's passions were inflamed or that the ruling led to

an unfair trial.  Since petitioner cannot establish the requisite prejudice for purposes of an ineffective assistance claim, the state court's decision is not an unreasonable application of federal law.

c.      **Trial counsel was ineffective for failing to object to the racial composition of the jury.**

Petitioner first raised this claim in a supplement to his PCRA petition where he cited to Taylor v. Louisiana, 419 U.S. 522 (1975) and Batson v. Kentucky, 479 U.S. 79 (1980).  The only argument presented to the PCRA court, however, was that trial counsel failed to object because none of the 12 jurors actually empaneled were petitioner's race or age (State Court Record, Doc. No. 54 at 5).  On appeal from the denial of PCRA relief, petitioner claimed for the first time that the sole black person in the jury pool was stricken by the prosecutor, and that trial counsel failed to object (id. at 5).

The Superior Court rejected petitioner's claim, first noting that petitioner's citation to Taylor inferred a systematic exclusion of blacks from juries, but that petitioner had pled no facts in support of such a claim. (Id. at 6).  The Superior Court also concluded that petitioner's Batson claim was not adequately pleaded because his allegation of a black juror being struck was made in petitioner's brief, and no other facts were alleged.  Therefore, the Superior Court concluded that petitioner's claims were so lacking in detail that they were "mere boilerplate" and failed to meet petitioner's burden of rebutting the presumption that counsel was effective (id. at 7).

Petitioner still has not pleaded any facts which support a claim that Erie County courts systematically exclude minorities from juries.  Hence, the state court's conclusion that no claim under Taylor had been made out is a reasonable one in light of applicable federal law.

Petitioner's Batson claim requires further analysis.  The Court of Appeals for the Third Circuit has recently discussed the two-prong standard for analyzing Batson claims:

> A defendant satisfies the first step of the Batson analysis "by producing evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." Johnson, 125 S.Ct. at 2417. Batson itself stressed the open-ended nature of the step one inquiry:
>
> > In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the

18

prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. We have confidence that trial judges, experienced in supervising *voir dire,* will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.

Batson, 476 U.S. at 96-97, 106 S.Ct. 1712. The District Court found that Wilson had established a prima facie Batson violation, relying primarily on McMahon's statements in the videotape as well as what was known about McMahon's conduct at Wilson's jury selection. We agree. The evidence in the McMahon tape, coupled with the fact that every juror challenged peremptorily by McMahon whose race was determined by the District Court was black, provides extremely strong support for the conclusion that McMahon engaged in purposeful discrimination. There is no doubt that a judge, relying on this evidence, could easily "draw an inference that discrimination has occurred." We recently noted that, "in some circumstances, suspicious questioning, coupled with strikes that seem to implement the thrust of the questioning, may be enough" to satisfy step one. See Bronshtein v. Horn, 404 F.3d 700, 723 (3d Cir.2005). Certainly, then, an admission by the prosecutor that he uses peremptory strikes to keep certain categories of African-Americans from serving, coupled with a limited record showing that he used many of his strikes on African-Americans in the case at issue, is sufficient.

Wilson v. Beard, 426 F.3d 653, 667-668 (3d Cir. 2005). Therefore, the use of several peremptory strikes, along with evidence of an intent to exclude minorities, is sufficient to state a Batson claim. Here, by contrast, petitioner has asserted only that counsel was ineffective for failing to object to the racial composition of his jury, and he has asserted, without record support, that a single black juror was struck from the panel. No other factors relevant to the Batson prima facie case were mentioned by petitioner in the state court, nor does he make such allegations here. The state court found that this was not sufficient to state a claim of ineffective assistance. The clear implication of the state court's ruling is that this limited information is not sufficient to put counsel on notice that a potential Batson violation has occurred.

Without more, the mere allegation that a single peremptory strike was used against a black venireperson is not sufficient to establish a prima facie case. Cf., Bronshtein v. Horn, 404 F.3d 700, 724 (3d Cir. 2005)(single peremptory strike not sufficient, standing alone, to satisfy prima facie case). Therefore, petitioner has not established counsel's ineffectiveness concerning the racial composition of the jury. Even if counsel had objected, he had, at most, a single peremptory strike to support his Batson claim, which is not sufficient to make out a prima facie case. Petitioner cannot

overcome the presumption of effectiveness in this case, and, accordingly, the state court's conclusion that petitioner failed to carry his burden with respect to his claim of ineffective assistance is not an unreasonable application of federal law.

### d.     The Commonwealth failed to prove all of the elements of the criminal charges.

Where a petitioner challenges his incarceration on the ground that the evidence was insufficient to support his conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Under this standard, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume--even if it does not affirmatively appear in the record--that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Jackson, 443 U.S. at 326. Accord Moore v. Deputy Commissioner(s) of SCI-Huntington, 946 F.2d 236, 243 (3d Cir. 1991), cert. denied, 503 U.S. 949 (1992). A federal court must apply this standard "'with explicit reference to the substantive elements of the criminal offense as defined by state law.'" Orban, 123 F.3d at 731 (quoting Jackson, 443 U.S. at 324 n. 16). The finder of fact, however, weighs the evidence and the federal courts must defer to the its resolution of conflicts in the evidence. Jackson, 443 U.S. at 326.

The test for sufficiency of evidence is the same under both Pennsylvania and federal law. See Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1233 (3d Cir. 1992), cert. denied, 506 U.S. 1089 (1993); Commonwealth v. Bricker, 525 Pa. 362, 581 A.2d 147 (1990) (an appellate court must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all of the elements of the offenses charged). The Superior Court applied this standard in addressing each of petitioner's challenges to the sufficiency of the evidence (State Court Record, Doc. No. 54 at 7-8). The victim's testimony in this case established the elements of the offenses charged. His description of the attack, and his attackers, was obviously credited by the jury. And, for the reasons set

forth by the Superior Court, the elements of robbery, aggravated assault and conspiracy were satisfied under state law. The state court's ruling in this respect is not an unreasonable application of federal law.

### e.    It was error to admit the knife into evidence as it was irrelevant.

State court evidentiary rulings are normally not a proper subject for federal habeas review. Further, if a petitioner wishes to make such a claim in federal court, he must present that claim as something more than a state evidentiary issue during his state court appeals. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004). Petitioner did not claim in the state court that the admission of the knife was a federal issue. Instead, it was pursued purely as a matter of state law (State Court Record, Doc. No. 35 at 7-8). This claim is not a proper subject for federal habeas review. See Johnson v. Rosemeyer, 117 F.3d 104, 109 (3d Cir. 1997); Geschwendt v. Ryan, 967 F.2d 877, 888-89 (3d Cir.1992).

And, in any event, for petitioner to state a constitutional claim he must establish that the admission of the knife as demonstrative evidence was so prejudicial that it denied him a fair trial. See, Lesko v. Owens, 881 F.2d 44, 51-52 (3d Cir.1989) (where probative value of evidence, though relevant, is greatly outweighed by the prejudice to the accused from its admission, then use of such evidence may violate fundamental fairness and due process). In this case, the knife was described by the victim as being similar to the one used against him, and the court told the jury that it could not infer that it was the actual knife. In such a setting, it is difficult to see how petitioner suffered prejudice at all from its admission, much less prejudice of such magnitude to violate fundamental fairness.

### f.    The trial court erred in denying petitioner's motion for new counsel on direct appeal.

This claim can only succeed if a claim not raised by counsel would have resulted in a different result on appeal. Diggs, supra. Petitioner has not identified any such meritorious claim which was not raised on direct appeal.

> **g.    The trial court erred in failing to grant a mistrial due to the "St. Patrick's Day" comment made during closing arguments.**

The Supreme Court has held that federal habeas relief may be granted when the "prosecutorial misconduct may 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.' " Greer v. Miller, 483 U.S. 756, 765, 107 S.Ct. 3102, 97 L.Ed.2d 618 (1987) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)). The Court further opined that for due process to have been offended, "the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial.' " Id. (citing United States v. Bagley, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (quoting United States v. Agurs, 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976))). See also Ramseur v. Beyer, 983 F.2d 1215, 1239 (3d Cir.1992) (our review of a prosecutor's conduct in a state trial in a federal habeas proceeding is limited to determining whether the prosecutor's conduct " 'so infect[ed] the trial with unfairness as to make the resulting conviction a denial of due process.' " (quoting Greer, 483 U.S. at 765, 107 S.Ct. 3102)). This determination will, at times, require a fine line to be drawn -- distinguishing between ordinary trial error on one hand, and " 'that sort of egregious misconduct which amounts to a denial of constitutional due process' " on the other hand. Ramseur, 983 F.2d at 1239 (quoting United States ex rel. Perry v. Mulligan, 544 F.2d 674, 678 (3d Cir.1976)).

In evaluating whether the remarks of the prosecutor rise to the level of a constitutional violation, we are required to examine those remarks in the context of the whole trial. Ramseur, 983 F.2d at 1239 (citing Greer, 483 U.S. at 766, 107 S.Ct. 3102). The remarks must be sufficiently prejudicial in the context of the entire trial to violate a petitioner's due process rights. Greer, 483 U.S. at 766, 107 S.Ct. 3102 (citing Donnelly, 416 U.S. at 639). In this case, the trial court was in the best position to judge the effect, if any, that this comment had on the jury. It determined that there was no attempt made to prejudice the jury, and that no prejudice actually accrued. These conclusions are entitled to a

22

presumption of correctness. Indeed, it is difficult to imagine that a greeting offered to the jury by counsel at the start of closing arguments (which at different times of the year could have been the equally innocuous salutations "Happy Holidays" or "Happy Halloween") could possibly cause prejudice sufficient to warrant a new trial.

**6.    Certificate of Appealability.**

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong..." Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000). A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings." McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard.

As Petitioner has not met this standard, a certificate of appealability should be denied.

**<u>CONCLUSION</u>**

Wherefore, on the basis of the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus be dismissed and that a certificate of appealability be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

 /s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
UNITED STATES MAGISTRATE JUDGE

Dated: October 24, 2006

cc:     The Honorable Sean J. McLaughlin
        United States District Judge